IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY HOUSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 21-cv-02318 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| RYAN KREWER, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Defendant Kara Matakiewicz's motion to dismiss Plaintiff's Second Amended Complaint [45] is granted. Count I is dismissed as to Defendant Matakiewicz. See the accompanying Statement for details.

**STATEMENT**

Plaintiff Anthony Houston, a prisoner of the State of Illinois, has brought suit pursuant to 42 U.S.C. § 1983 against Defendants Kara Matakiewicz ("Nurse Matakiewicz"), Leslie Wilking ("Nurse Wilking"), and Wexford Health Sources, Inc. ("Wexford") for alleged deliberate indifference to his serious medical need in violation of the Eighth Amendment to the United States Constitution.[1] Before the Court is Nurse Matakiewicz's motion to dismiss Houston's claim against her pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 45.)[2] For the reasons that follow, the motion is granted.

**I.**

For purposes of Nurse Matakiewicz's motion, the Court accepts as true all well-pleaded factual allegations in the Second Amended Complaint ("SAC") and draws all reasonable

---

[1] Wexford is a private corporation that contracts with the State of Illinois to provide health care to inmates in the custody of the Illinois Department of Corrections. During the relevant time period, Nurse Matakiewicz and Nurse Wilking were employed by Wexford. Houston originally sued certain employees of the Illinois Department of Corrections as well. Those claims have been dismissed pursuant to a settlement. (*See* Dkt. Nos. 91, 95.) As a result, only Houston's claims against the Wexford-related Defendants remain in the case.

[2] Nurse Matakiewicz filed her motion to dismiss Houston's First Amended Complaint on February 14, 2022. (Dkt. No. 45.) On March 25, 2022, after Nurse Matakiewicz's motion was filed but before it had been briefed, the Court granted Houston leave to file a Second Amended Complaint, which was then filed on March 31, 2022. (Dkt. Nos. 55, 58.) As the Second Amended Complaint did not substantively change the allegations as to Nurse Matakiewicz, rather than requiring her to refile her motion, the Court ordered briefing to proceed as if her motion had been filed in response to the Second Amended Complaint.

inferences from those facts in favor of Houston as the non-moving party. *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The SAC alleges, in relevant part, as follows.

Houston was incarcerated at Stateville Correctional Center ("Stateville") at all times relevant to the SAC. (SAC ¶ 3, Dkt. No. 58.) According to Houston, Stateville suffers from a pervasive and well-known cockroach infestation. (*Id.* ¶¶ 22–23, 34.) During his time there, Houston filed multiple grievances regarding the cockroach infestation in his jail cell. (*Id.* ¶¶ 29–33.)

As relevant here, during the overnight hours between February 21 and February 22, 2020, unbeknownst to Houston, a cockroach crawled into his left ear and died while he was sleeping. (*Id.* ¶ 35.) The next morning, Houston informed Nurse Matakiewicz that his ear was "bothering him" and that "something felt wrong." (*Id.* ¶ 36.) Nurse Matakiewicz, who was delivering medication to the cell block at the time, stated that there was nothing she could do and Houston should "put-in for a sick call." (*Id.* ¶ 37.) Houston requested a sick call that same day, and he was examined by a nurse the following day, February 23, 2020. (*Id.* ¶¶ 39–40.) Upon examination, the sick-call nurse discovered the dead cockroach in Houston's ear and rushed him to the Health Care Unit to have his ear flushed. (*Id.* ¶ 41.) At the Health Care Unit, Nurse Wilking flushed the cockroach from Houston's ear. (*Id.* ¶ 42.) Though he requested treatment or medication to address the severe pain that remained, Nurse Wilking denied Houston's request. (*Id.* ¶¶ 43–44.)

On February 29, 2020, Houston submitted another sick-call request and put in for another medical visit, as he was still experiencing ear pain. (*Id.* ¶ 46.) He was seen nine days later. (*Id.* ¶¶ 47–48.) During that visit, Houston received oral antibiotics and eardrops. (*Id.* ¶ 48.) On or about April 29, 2020, Houston underwent a hearing test during which it was determined that he had ear damage. (*Id.* ¶ 50.) Houston subsequently filed two additional grievances complaining of headaches and chronic ear pain. (*Id.* ¶ 51.)

Notably, the only allegations in the SAC that mention Nurse Matakiewicz are the following:

- "[o]n the morning of February 22, 2020, during her delivery of medications to the cell block, Mr. Houston informed [Nurse Matakiewicz] that his ear was bothering him and that something felt wrong" (*id.* ¶ 36); and

- when Houston complained about his ear bothering him, "Nurse Matakiewicz stated that there was nothing she could do and that Mr. Houston needed to 'put-in for a sick call'" (*id.* ¶ 37).

Based on these allegations, in Count I of the SAC, Houston asserts a claim against Nurse Matakiewicz for deliberate indifference to his serious medical condition.

## II.

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

2

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

An Eighth Amendment deliberate indifference claim requires a plaintiff to establish that he suffered from "(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (internal quotation marks omitted). The first, objective, element of a deliberate indifference claim requires in the medical context that "the inmate's medical need be sufficiently serious." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). The second, subjective, element requires the plaintiff to prove that the "prison official acted with a sufficiently culpable state of mind. A negligent or inadvertent failure to provide adequate medical care is insufficient to state a [§] 1983 claim." *Id.* Here, Nurse Matakiewicz contends that Houston has failed to plead the second element—*i.e.*, that she was subjectively indifferent to his serious medical condition. The Court agrees.[3]

A finding of deliberate indifference requires an official to know the extent of the plaintiff's serious medical condition and actively, through inadequate actions or inaction, to disregard the condition. *See Gomez v. Randle*, 680 F.3d 859, 865–66 (7th Cir. 2012). But here, Houston has alleged only that Nurse Matakiewicz knew that "his ear was bothering him and something felt wrong." (SAC ¶ 36.) There is no allegation in the SAC that Houston expressed to Nurse Matakiewicz that he was suffering from great pain (indeed, the SAC does not indicate that Houston described his condition to Nurse Matakiewicz as "painful" at all). Nor does Houston allege that he told Nurse Matakiewicz that he believed he had a cockroach in his ear. And unlike other Defendants named in the SAC, Houston does not expressly allege that Nurse Matakiewicz knew about the cockroach infestation at Stateville or in Houston's cell. (*See, e.g., id.* ¶¶ 19 (alleging that Houston discussed the cockroach infestation with Defendant Ryan Krewer), 20 (alleging Defendant David Gomez's knowledge of the cockroach infestation). In short, the sparse allegations in the SAC regarding Nurse Matakiewicz are not sufficient to support a plausible inference that she knew about Houston's condition but disregarded it.

To the contrary, Houston's allegations indicate that Nurse Matakiewicz acted reasonably given what she is alleged to have known. Given that Nurse Matakiewicz was in the process of delivering medication to the cell block when Houston informed her that his ear was "bothering

---

[3] Although Houston's response to Nurse Matakiewicz's motion spends time arguing that the dead cockroach in his ear and resulting complications did, in fact, constitute an objectively serious medical condition, Nurse Matakiewicz does not dispute that element of Houston's deliberate indifference claim. The issue raised by Nurse Matakiewicz's motion is not whether Houston's condition was objectively serious but rather whether Nurse Matakiewicz was subjectively aware of the seriousness of his condition. Accordingly, for purposes of this ruling, the Court need not address whether Houston actually suffered from an objectively serious medical condition. Suffice to say, the Court is satisfied that Houston's allegations that he suffered pain, inflammation, and damage to his hearing as a result of a cockroach crawling into his ear and dying there sufficiently allege an objectively serious medical condition.

him," her response that Houston should put in for a sick call appears altogether reasonable. Rather than ignoring his complaint, Houston directed him on how to obtain help, and he followed her advice. At most, the allegations might support an inference that Nurse Matakiewicz exercised gross negligence by not checking Houston's ear immediately at the time he initially complained. But allegations of negligence do not sufficiently state a claim for deliberate indifference. *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 764–65 (7th Cir. 2002).

Houston further suggests that, because Nurse Matakiewicz did not examine his ear when he first complained to her, he experienced a delay in treatment that led to more serious harm. A delay in treatment can support a claim of deliberate indifference if the delayed treatment of a readily treatable injury worsens a plaintiff's condition. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.* Here, however, Nurse Matakiewicz was not the individual responsible for delaying Houston's treatment. Instead, Nurse Matakiewicz's involvement was limited to her single interaction with Houston the morning he first began to experience pain. (SAC ¶¶ 36–37.) Houston took Nurse Matakiewicz's advice and placed a sick call that same day. (*Id.* ¶ 39.) Any alleged delay in treatment after Houston placed this sick call— such as Houston's claim that he waited nine days after the cockroach was removed from his ear before he received antibiotics and eardrops to address the resulting inflammation and pain (*id.* ¶¶ 47–48)—would have been the responsibility of other Defendants.

For all these reasons, Houston has not sufficiently alleged that Nurse Matakiewicz was deliberately indifferent to his serious medical condition Accordingly, Houston has failed to state a claim for deliberate indifference against Nurse Matakiewicz. Her motion to dismiss the claim against her in Count I of the SAC is therefore granted.

Dated: June 26, 2023

Andrea R. Wood
United States District Judge

4